Good morning. My name is Clay Hernandez. I represent Norman Garcia. I'd like to reserve five minutes, please. What I'd like to begin with is our argument regarding the lesser-included jury instruction that we believe should have been given. We cite Keeble, the Keeble case, which we believe controls, we believe the facts are extremely similar, with the exception that trial counsel during the trial or prior to jury instructions did not request that. Keeble talks about the all-or-nothing mentality that a failure to include a lesser-included instruction engenders in the jury, if you will. Do you want to argue that 924 is a lesser-included instruction of 113, or is it the other way around? No, Judge. I'm sorry. That was my double jeopardy argument. This has to do with whether or not a lesser-included instruction from assault, from the assault charge, should have been a simple assault, should have been given pursuant to the motion for new trial that trial counsel filed on behalf of Mr. Norman Garcia. Thank you. I think the question for this Court becomes one of whether or not the – this Court can rule that a district court judge has a duty sua sponsa to order that – order that – You didn't preserve it, so you're here on plain error. I'm sorry? You didn't preserve it, so you're here on plain error? Yes, Judge. We – he did preserve it. Our position is he preserved it, although not prior to the jury instruction. But following the guilty verdict, he did file a motion for new trial, and we believe that the record is fully developed at this point with regard to that question. So our position, Judge, is that there's a number of lesser courts that don't control this court that have likewise found, as Keeble did, that there is a sua sponsa obligation to make that instruction. And we believe that the Beck case, while it didn't go that far, because it was dealing with an Alabama statute that did not include lesser included cases in – or lesser included charges in capital cases, gives the same rationale. In fact, it cites Keeble to a great degree with regard to our position of all or nothing. So at this point, we would ask that with regard to that instruction, that the case be returned for a new trial with a lesser included instruction. I think if you would – But what would be the basis for the lesser included instruction on these facts? On these facts, Judge, I think you could – while the argument was – had to do with a gun, and the gun that was shot by – one shot fired by my client, I believe you could make the argument of placing another reasonable apprehension of physical injury or harm with the way the vehicles were driving or the way my client's vehicle was driving with regard to the gun. See, if there had been a request for such an instruction, the posture of the case would be one way. That was not. So we have to find that a court that fails to sui sponte instruct the jury has committed plain error in every case. Judge. As they are here. What I'm asking for the court to do is find that there's plain error in this case. We believe that the fact that the case is exactly as Keeble was and the rationale for the lesser included offense would have been the same as in the Keeble case. The question, as the Court correctly states, is whether or not the judge had a duty to do that. We believe that under the facts of this case and under the case law that we cited that that would be appropriate. What are the facts that were – should have been so apparent to the judge that he should have, without anyone asking, given the instruction? What are the specific facts that you say would tip him off? Well, Judge, I think if you look at the argument within the trial where the defendant – and again, I was not trial counsel, but where the defendant, Mr. Norman Garcia, allegedly fired one shot, he made an argument that – a statement upon his arrest that it was an accidental – an accidental shot. There wasn't evidence to show that any bullet he may have shot even struck the car. No evidence that that happened? Yes, Your Honor. As I read the record, the officer who was driving the car heard the shot hit the car. There are a number of holes in the car. As I read the record, the officer who was driving the car heard the shot hit the car. Judge, I believe the shot that they are attributing to Mr. Norman Garcia indicated that she did not hear a shot hit the car. She believed, in fact, that it was simply rocks being thrown up by her tires as she was rapidly exiting the dirt road. I didn't read your opposition brief – the opposition brief to say that. I'll have to go back and read the record. So there is no question he fired a shot. That's correct, because he admitted – There's no question he's firing a shot at the car. I'm sorry, Judge, I didn't hear you. He's firing the shot at the car. He did fire a shot. The question was whether or not he intended to. That's what the trial defense was of the defendant. Because there was this evidence about how many pounds of pressure it takes and because of his statement that he didn't mean to shoot, but he had his gun out there pointed in that direction. I believe he was recklessly waving it around, yes, Judge. And that's not – and based upon that, you feel there should have been – that an instruction should have been given. What is the harm? The harm, Judge, we believe is that, as Keeble states, that the trial – the jury goes in and decides, you know what, there was wrongdoing in this case, and there was quite a bit of wrongdoing, but we're faced with either letting him go completely clear or finding him guilty of what he is charged with, and there's nothing in between. And as Keeble indicates, and I believe Beck makes reference to, what they're concerned about is rather than a jury saying, well, they didn't prove it, we're not going to go that far, because there was enough wrongdoing, that they will come forward with a conviction. Judge, we don't have a record to tell what the – how the jury deliberated, but as the Court knows, within a very short period of time, they returned one verdict, and there was – they had to recess over a weekend and come back to return a second verdict. I don't believe anybody in the courtroom or in Tucson or either part of here believes it was – they were hanging or trying to decide as to Mr. Poncho, Judge Garcia, the co-defendant, who went on the 18-mile. And I, along with you, have tried enough cases and seen enough as a trial judge that it's pretty hard to guess, and I think it's well that we're not allowed to guess because it would be difficult to hang it on that. But that – in answer to your question, that's what we believe the prejudice is, is that they – not having to do with the delay or delaying or potentially hanging up, but that they were faced with a very small amount of evidence with regard to my client, Mr. Norman Garcia, and a plethora of evidence as to the co-defendant. And it was based upon that that they – that they convicted him of – His case was tried at the same time but has a separate role coming up here? I'm not following the Court. I apologize. It was – They were tried together. Yes. And judgment was entered against them, and both of them appealed, but separately. You got here first. I got here first, Judge. In fact, I've talked to a known co-defendant's counsel for many years, since when she used to be a county public defender in Pinal County. In speaking with her, she withdrew her appeal in an attempt to go back to the district court and get it to run concurrent, which she succeeded at doing only recently. I see. That was the reason. I couldn't understand why the other one wasn't here. That's why. Thank you. Judge, at this point, I have about 5-1⁄2 minutes, 6-1⁄2 minutes left. I'll stop at this point. Thank you. Good morning, Your Honors. I'm Angela Woolridge, appearing on behalf of the United States. Because the defense started with the lesser-included instruction, I'll start my comments there as well. First of all, with due respect to counsel, I believe that he misstates the holding in Keeble. In Keeble, there was no sua sponte obligation assigned to the district court. In fact, that case specifically dealt with a request made by trial counsel that was rejected on the mistaken basis that the Major Crimes Act prohibited a lesser-included instruction for a simple assault for an offense committed by an Indian on the Indian reservation. And the court found in Keeble that and stated specifically that they were only holding that the Major Crimes Act does not prohibit a lesser-included instruction. It did not find that such an instruction was necessary. And it's interesting to point out in that case that the government actually conceded that under the facts in Keeble, a lesser-included instruction would be applicable. That's very different than the posture we're in here. Because in this case, that lesser-included offense would not be applicable. The defense argued that he acted accidentally in the act that comprised the assault in this case. Even the lesser-included requires an intentional act. So under no theory that was presented, under no set of facts that was before the court, would that lesser-included offense be appropriate? So when this Court asked my colleague, you know, on what facts should have made the district court, sua sponte, give this instruction, there were no such facts. Either the jury believed the government's theory that the defendant committed the offense, which they did, and they convicted him of it, or they would have believed the defendant and he would have had a full acquittal, even if given a charge for lesser assault, because the defendant's argument was that he acted accidentally, that he had no intent, that it was an accidental discharge. And the lesser-included offense requires, does not require, does not embrace an accidental discharge? Correct. The mens rea for the lesser-included offense of assault is intentionally. Okay. So under the defense theory, that lesser-included, if the jury would have believed the defendant, they would have acquitted him of the lesser as well. There is no conceivable set of facts from which the jury could have acquitted him of the greater and convicted him of the lesser. And so certainly that doesn't amount to plain error, which, as this Court and the Supreme Court have stated, plain error is a very heavy burden for the defendant to meet, and he just simply fails to do that in this case because it's not he can't show that it would have substantially and materially affected the verdict in this case. Refresh my recollection about the facts. Did he fire only once? He did fire only once. And am I mistaken that the officer heard that? Was that the brother's shooting that she heard hitting the car? You're not mistaken, Your Honor. She did testify that she did hear the first shot hit the car. She thought it was a rock. Someone was throwing a rock at her vehicle. At that point, it didn't quite – she didn't quite conceive the fact that someone might be shooting at her. But later found out that obviously there were no rocks being thrown. It was the shot. She heard the shot, thought at that time it might have been a rock, then found out it wasn't. Right. And specifically, she heard the shot hit the car. It wasn't simply the – it wasn't the sound of the gun going off, but she heard it strike her vehicle. That's what I thought. Okay. So we would submit that that fact, the fact that the shot actually hit the car rather than just randomly somewhere in the air, was part of the evidence that the jury considered when it rejected the defense that it was an accidental discharge. That, of course, coupled with the fact that the defendant had been acting aggressively by pursuing the victim's vehicles, forcing – trying to force them off the road. Even after his car stalled, he continued to try to catch up with them. When he was at the scene, he hid his gun. He gave false statements to the officers, in fact, first claimed that he was riding in a car with his sister, made several conflicting statements with regard to his involvement before eventually admitting that, yes, he had, in fact, shot a gun. And interestingly enough, during the interview with the ATF agent, the defendant actually admits the officer asked him, and you shot it, referring to the gun, and the defendant replies, yeah, and then – and you fired one round, and the defendant replies, yeah, both of these statements that reference an intentional act, even though the defendant then denied that he had acted intentionally. The court referenced the evidence that was presented with regard to the amount of pressure that would be necessary to fire the gun and why an accidental discharge was so unlikely. In addition, there were eight law enforcement officers with combined experience of over 100 years of law enforcement experience. None of them had ever had an accidental discharge or were even involved in incidences where it had occurred. Several of these officers were firearms instructors. The jury heard this evidence. They were also given the 5-pound weight that Special Agent Hanover used to test the specific fire of the defendant's own firearm so they could judge for themselves how much pressure would actually be necessary and evaluate the credibility of the defendant's statement. Your Honors, the defendant's defense just simply wasn't credible, given all of the evidence presented in this case, the inconsistent statements he made, his actions in pursuing the victim's vehicles, his aggressiveness. He made several inconsistent statements. As I mentioned before, he first said he didn't call 911 because he didn't have a phone, but then later admitted that he did have his cell phone with him and had used it to call his brother, the co-defendant. He gave inconsistent statements about why he had his gun out in the first place. He first claimed that he was just waving it to scare the victims. But then when he testified at trial when confronted with how that was just not believable because it was dark out and he was behind the vehicle and his gun was black, he then said he had pulled out the gun because he was worried that the victims were going to attack his brother, for which there was certainly no evidence to support that. So, Your Honors, I guess I've kind of moved into my next argument was regarding the sufficiency of the evidence. There certainly was sufficient evidence to sustain the conviction. Can you turn to the double jeopardy question? Yes. Your Honor, our position is that that the double jeopardy issue is clearly foreclosed by this Court's precedent, finding that a consecutive sentence for 18 U.S.C. 924c and 18 U.S.C. 113 is not double jeopardy because both offenses require proof of an element that the other does not. Just humor me. What does 924 require that 113 doesn't require? What does 113 require that 924 doesn't require? The most specific, the most obvious difference is the use of a firearm. So that's 924 requires the use of a firearm, whereas 113 is just the use of a weapon. Correct. Just use of any dangerous weapon. It could be a vehicle. It could be a knife. It could be anything else that could be used as a weapon. Okay. And the 113? 113 requires the – requires, first of all, a jurisdictional element. In this case, that it was that the offense was committed on Indian country. It requires the intent to do bodily harm, which is not required by 924c. 924c certainly requires a knowing or intentional mens rea. However, it doesn't require specific intent as to bodily harm. In this case also, because the 924c implicated the 10-year minimum mandatory for discharge of a firearm, that discharge, not only did a firearm need to be used, but it needed to be discharged. That doesn't – that is not necessary for 18 U.S.C. 113. So there are several distinctions between the two statutes. And as I mentioned, that issue has been foreclosed by this Court's precedent, finding, in fact, that the – that consecutive sentences are not double jeopardy. The final argument, Your Honors, regards severance in this case from the trial of the This Court has previously found that there is some prejudice that is inherent in a joint trial. The defendants must show more than that. He must show that – more than just the fact that he might have a better chance of acquittal in a separate trial. He must show more than just that the defense – the evidence against the co-defendant might be stronger. He must show that the denial of his motion to sever is so manifestly prejudicial as to outweigh the dominant judicial economy concern, and that there was some violation of his substantive rights. In this case, Your Honors, there was no substantive rights that were violated. The defense tries to make this into a brutal issue, but that simply wasn't the case, first and foremost because the co-defendant testified. And so the defendant had the opportunity to cross-examine him if he so chose, which he did not. But furthermore, the co-defendant's statement in no way implicated the defendant as to the issue at – that was disputed at trial. There was no dispute at all that – about identity, that the defendant, Norman Garcia, was the individual involved in this case and committed this offense. There was no dispute as to whether a firearm was used. There was no dispute as to those facts. The only dispute really came down to whether the defendant acted intentionally or accidentally. The co-defendant, Pancho Garcia, made no statements at all regarding his belief about Norman's intent, any evidence about Norman's intent. There was simply no harm to the defendant from the introduction of the co-defendant's statement. And again, the co-defendant himself testified. So while the defense tries to make this into a Bruton issue, it's simply that that very narrow exception under Bruton just doesn't exist in this case. And that because there was no violation of his substantive rights, there simply is no ground for reversal on the basis of the denial of the motion of severance. This is a classic case where defendants are charged jointly, and should be jointly trialed, and then the court appropriately denied the motion to sever. The evidence in this case was very straightforward, and the jury could easily compartmentalize the actions of the defendant and the actions of the co-defendant. In fact, the specific actions of the co-defendant that the defendant complains of were actions that occurred when the defendant's vehicle stalled, and the defendant was physically in a separate location at that time. So it was very easy for the jury to compartmentalize what actions were committed by the defendant, what actions were committed by the co-defendant. There was no issue of confusion of who fired the first shot, who fired the subsequent shots. It was undisputed that the defendant fired the first shot, and the subsequent shots were fired by the co-defendant. And as we also argue in the brief, the separate trials, at a separate trial, the same evidence would have come in, because the defendant's case did not stop once the defendant stopped, but once his car stalled. He then started his car back up. Instead of turning around and going home, he decided to follow and catch up with the victims. He came to the scene. He hid his firearm. He made several inconsistent statements, made false statements to law enforcement officers, showing his consciousness of his guilt. There was damage to the vehicle that was very relevant and came in and would have come in at a separate trial. And certainly it is � defies reason to think that the defendant himself wouldn't try to introduce evidence of his co-defendant's actions to try to prove that the damage to the vehicle was caused by the co-defendant, that it wasn't caused by the defendant himself. So we would submit that all of the evidence would have come in, in any event, and there was no prejudice from � to the defendant from the denial of the motion to sever. Unless the � you know, if the defendant is not guilty of the crime, then we would submit that all of the evidence would have come in, in any event, and there was no prejudice from � to the defendant from the denial of the motion to sever. Unless the � you know, if the defendant is not guilty of the crime, then we would submit that all of the evidence would have come in, in any event, and there was no prejudice from � to the defendant from the denial of the motion to sever. Unless the � Your Honors have any additional questions? Roberts. Thank you, counsel. Mr. Hernandez, you have reserved some time. With regard to the double jeopardy, I'd like to address two very quick matters The first has to do with we believe the government is putting the cart before the horse. They are talking about the fact that this instruction would not have been given because of the defense that was put forward.  The second is that the trial counsel has not been informed of this instruction or this possibility for a lesser-included offense until the trial was over. And it's our position that the proceeding, the defense, and his presentation of the case would have been much different if there had been evidence. Okay. But that's evidence of ineffective assistance of counsel, isn't it? Right. That's not an argument that you've made here and probably not one that you can make on direct appeal. And I agree. But my point is, is the government makes a big deal out of that, and they talk about that a great deal in their response to our argument about double jeopardy. And it's our position that that argument is something that would be dealt with in an ineffective assistance of counsel. Wait a minute. You're not double jeopardy. You mean the jury instruction? No. Yes. I'm sorry. The jury instruction, the lesser. I apologize. What I'd like to do now with court's permission is address the issue of severance. It's our position that the government desperately needed Pancho Garcia in this case. Pancho Garcia was arrested by state authorities. He was placed in a state county jail, and he was going forward in a state charge. Mr. Norman Garcia, my client, was arrested several days later by federal authorities. And, in fact, there was testimony throughout the case where the federal officer would say, I don't know, because that was something done by the state authorities. Your position, and I gather from your argument, your position is if there had been severance, the court would have been precluded from calling the other as a witness. The defendant would have been – I'm sorry. The State would have been called from prohibitive? The State would have been prohibited from calling the other defendant as a witness. Well, it would be our position that more than likely the other defendant would have been called to Fifth Amendment protection if they had called him. If the court is asking me about whether they could have put forth the evidence as the government continues, it's our position that they could not have. Our involvement in this case, our – let me rephrase that. Our acts, the defendant's acts in this case stopped on the reservation within a mile of the house. There was one shot, his car stalled, and that was it. He didn't participate. But you don't want to mistake the record. I'm sorry? You don't want to mistake the record. That was it for the moment. Did he get his car started again? Well, that – no. Do you need to follow? My position, Judge, is that the government makes it – makes it seem as though it continued with regard to any crime he committed. His crime ended right then with regard to when – once he had shot, he had stalled. The government is correct. He goes with other family members looking for his brother. Apparently there are cell phone calls. They believe they're chasing a burglar. There are other actions. But as far as his crime and the actions that he engaged in on the reservation that make it the subject of this Federal charge, they occurred right then. There wasn't the 18-mile chase, as I've said. I mean, he shoots out tires. This poor woman is driving on rims trying to get away from Pancho Garcia and ultimately crashes her car. None of that – it's our position that that doesn't come in with regard to Norman Garcia. I know the government would like to think that that does, but, again, that's something that we don't have before us in our position is that it would not have come forward. I don't know if the Court has any additional questions. I don't have anything else to add at this point. I don't think so. Very good. Thank you. Thank you very much. Thank counsel for the argument.
judges: Wallace, Farris, Bybee